IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Power Energy Corporation, a North Dakota Corporation; Altschuld Oil, L.L.C., a Colorado Limited Liability Company; Copperhead Corporation, a North Dakota Corporation; Strata Resources, Inc., a Colorado Corporation; Michael S. Johnson, a Colorado Resident; Michael T. Fitzmaurice, a North Dakota Resident; Patrick L. Butz, a North Dakota Resident; and Jacques F. Butz, a North Dakota Resident,<br><br>        Plaintiffs,<br><br>  vs.<br><br>Hess Bakken Investment II, L.L.C., a Delaware Limited Liability Company,<br><br>        Defendant. | **ORDER RE HEARING ON MOTION FOR SUMMARY JUDGMENT AND SCHEDULING**<br><br>Case No.: 1:17-cv-093 |

The court will hear oral argument on the pending motion by defendant for summary judgment on the 8th day of April, 2021 at 9:00 A.M. CDT by conference call. In addition to holding argument, the court intends to set a trial date in the event the court denies the motion for summary judgment. Hence, the parties should be prepared to discuss how much time will be required for a trial and what dates are available.

After reading the briefs and reviewing the record, the undersigned has a number of questions. Given the complexity of the agreements and transactions, the court thought it would be more productive to give advance notice of what some of the questions may be.

To begin with, the court wants to make sure it correctly understands the two July 8, 2004 PSAs that are at issue. In putting pen to paper, a rough draft of the court's understanding is as

1

follows:

>    B.   **The Prima Group's purchase of oil and gas leases from the Altschuld Group under the Altschuld PSA and from Strata under the Strata PSA**
>
>    1.   **The Altschuld and Strata PSAs**

On July 8, 2004, Prima Exploration, Inc. ("Prima Exploration"), Gunlickson Petroleum, Inc., Niwot Resources, LLC, Cordillera Energy Partners II, LLC, Berry Ventures, Inc., and Strata Resources, Inc. ("Strata") (collectively the "Prima Group") entered into two separate purchase and sale agreements ("PSAs") for the purchase of a number of oil and gas leases in Mountrail County, North Dakota. As relevant here, the sellers under the two PSAs owned oil and gas leases in areas that, in part, overlapped with each other. The two PSAs were similarly structured. Both included an Area of Mutual Interest Clause ("AMI Clause") that was coordinated with and referenced the other PSA..

Plaintiffs Altschuld Oil, L.L.C. ("Altschuld Oil"), Powers Energy Corporation ("Powers Energy"), and Copperhead Corporation ("Copperhead") were the sellers under the "Altschuld PSA" and will be collectively referred to as the "Altschuld Group." (Doc. No. 30-1). The AMI delineated in the Altschuld PSA will be referred to as the "Altschuld AMI."

Plaintiff Strata Resources, Inc. ("Strata") was the sole seller under the "Strata PSA." (Doc. No. 30-2). It also was a buyer of 2% of the interest acquired by the Prima Group. The AMI specified in the Strata PSA will be referred as to the "Strata AMI."

>    2.   **The Altschuld and Strata AMIs**

The Altschuld AMI encompassed the following lands in Mountrail County, North Dakota:
> Township 157 North, Range 91 West – All
> Township 157 North, Range 90 West – S½
> Township 156 North, Range 92 West – All
> Township 156 North, Range 91 West – All
> Township 156 North, Range 90 West – All

The Strata AMI was broader in reach. It encompassed the same lands as the Altschuld PSA as well the following additional land in Mountrail County:
> Township 155 North, Range 92 West – All
> Township 155 North, Range 91 West – All
> Township 155 North, Range 90 West – All

(Doc. Nos. 30-1, p. 3; 30-2, p 2).

Under the AMI Clauses in both the Altschuld and Strata PSAs, the Prima Group had the right to purchase any new leases acquired by the sellers within one year following execution of the PSA within the AMI of the respective PSA. For any leases acquired by the Prima Group during the same one-year period, the Prima Group agreed to assign to the sellers an overriding royalty interest ("ORRI") in percentages that varied depending upon where the newly-acquired leases were located and other criteria.

More particularly, under the Altschuld PSA, an ORRI was due the Altschuld Group on newly-acquired leases that varied depending upon the distance from an existing Altschuld lease as follows:

- 3% on newly-acquired leases located within one mile of an existing Altschuld lease
- 1% on newly-acquired leases within the Altschuld AMI but greater than one mile from an existing Altschuld lease

These percentages were subject to adjustment based upon the percentage of the total royalty burden imposed upon the Prima Group under a schedule set forth in the Altschuld PSA. Further, these percentages were subject to a further exception, which was that the ORRI would be only 0.5% for any lease acquired within the Altschuld AMI but within a mile of a Strata Lease and outside of a defined "Overlapping Area." The apparent reason for the reduction to 0.5% was due to the Strata AMI also encompassing the lands covered by the Altschuld AMI and Strata being entitled to ORRI on the same newly-acquired lease acreage under the Strata PSA as discussed next.

The Strata PSA's AMI provisions were similar but somewhat different. The Strata PSA provided that Strata (as the seller) was entitled to a 3% ORRI for newly-acquired leases within the Strata AMI and located within a mile of an existing Strata Lease. Like the Altschuld PSA, this percentage was subject to adjustment depending upon the total royalty that would be born by the Prima Group. Unlike the Altschuld PSA, however, no ORRI was due under the Strata PSA for newly-acquired leases within the Strata AMI but more than a mile from an existing Strata Lease.

Finally, the Altschuld and Strata PSAs both included an "Overlapping Area of Interest" provision. Under this provision, the "Overlapping Area" was defined to be an area where "both parties's [*i.e.*, the Altschuld Group's and Strata's] leasehold interests . . . are located within a mile of the other." Undoubtedly, the purpose for this provision was to deal with the fact that a 3% ORRI was due to each the Altschuld Group and Strata under their respective PSAs for newly-acquired leases within a mile of an existing lease. The solution to deal with this conflict was to provide that, for newly-acquired leases in the Overlapping Area, the ORRI was to be shared equally by the Altschuld Group and Strata.

One of the questions will be whether the foregoing correctly reflects how the two PSAs operate,

including that there potentially could be multiple Overlapping Areas.

Other questions the court will likely have include the following:

- In addressing the question of whether the Altschuld PSA is ambiguous as claimed by plaintiffs, what is the significance of the fact this it may present several "part in part out" and "contiguous acreage" interpretation issues as described in 28 Rocky Mountain Law Institute 14 (1982), which was cited by the North Dakota Supreme Court in Golden v. SM Energy Co.?  For example, what would happen under the Altschuld PSA if newly-acquired lease acreage had one tract within one mile of an existing Altschuld lease within the Altschuld AMI and another non-contiguous tract still within the Altschuld AMI but more than a mile from an existing Altschuld Lease?  Is a 3% ORRI owed on all of the lease acreage in that situation or is 3% owed on the lease acreage within a mile of the existing Altschuld Lease and 1% on the remaining Altschuld Lease Acreage?

- The title of one of the paragraphs in the Altschuld PSA reads: "Additional Acreage Acquired In AMI."  Does use of the words "acreage acquired in the AMI" suggest that only newly-acquired lease acreage lying within the AMI or Overlapping Area would be subject to an ORRI if the lease has some acreage outside of the AMI or the Overlapping Area?

- Under both the Altschuld and Strata PSAs, whether newly-acquired lease acreage within the AMIs is within one mile of existing lease acreage is significant.  Given that and the fact the acreage in question in this case lies outside of the Altschuld AMI, why is it reasonable to conclude in this instance that the parties intended that newly-acquired lease acreage that is not within the Altschuld AMI and is several miles from the Overlapping Area would be subject to an ORRI just because some of the lease acreage is within an Overlapping Area?

- Assume for the moment that Strata was not entitled to an ORRI with respect to the Federal Lease acreage in Sections 27, 28, and 33 simply because the Section 6 lease qualified.  With that assumption, was the Federal Lease acreage in Sections 27, 28, and 33 "within" one mile of an existing Strata Lease such as would entitle it to ORRI on that acreage for that reason?  What about the acreage in the SE1/4 of Section 17 in the same township that one of the maps identifies to be acreage under an existing Strata lease?

- Is the Red Sky PSA ambiguous with respect to what was being sold in terms of whether it was all the right, title, and interest in the leased lands or all of the right, title, and interest in a .8450 interest in the leased lands?

- Strata acquired 50% of the ORRI with respect to the Section 6 lands under the Federal Lease by virtue of the Assignment of Overriding Royalty from Prima

    Exploration.  What is the present status of that 50% interest?  Is Strata (and/or its successors and assigns to that interest) being paid on that ORRI? If so, why?  If not, why not?

- Has the North Dakota Supreme Court, the Federal District of North Dakota, or the Eighth Circuit decided a case addressing whether an obligation under an AMI clause to convey an ORRI runs with the land since Judge Hovland's decision in <u>Slawson Exploration v. Nine Point Energy, LLC</u>, No. 1:17-cv-106, 2019 WL 1518164 (D.N.D. April 2019).  In that case, Judge Hovland suggests the North Dakota Supreme Court's decision in <u>Golden v. SM Energy Co.</u> is not dispositive on the issue?.

- If the court concludes there is an obligation to pay an ORRI under one or both of the Altschuld and Strata PSAs and that the obligation runs with land, why cannot the court grant relief *vis-a-vis* Hess?  Surely, Hess cannot claim it was a good faith purchaser without knowledge of the obligations created by these PSAs since the two PSAs are explicitly referenced in the schedule to the Red Sky PSA.

- There appears to be nothing in the record that definitively indicates when plaintiff Michael Johnson acquired the interest upon which he bases his claim to the share of the ORRI he demands in the complaint.  However, it appears from one of the emails in the record that he acquired his interest well after May 16, 2007 (the date of the Red Sky sale to Hess).   (Doc. No. 35-9, p. 12). That being the case, can the court assume for purposes of the pending motion for summary judgment that Johnson acquired his interest after the Red Sky sale?

- Plaintiffs take the position that the court's determination there is an ambiguity necessarily requires a trial, citing several North Dakota Supreme Court cases. Even if that is correct (the court is not so sure), the court is struggling with what probative evidence  either party could offer that is not already part of the record—particularly since the "mutual" intent the court must determine with respect to the Altschuld PSA is for nine different entities who were parties to the Agreement.  Also, the court is skeptical that testimony now by a party with respect to what its intent was at the time of execution of the Altschuld PSA is entitled to much, if any, weight.  See <u>Sickler v. Lone Tree Energy & Associates</u>, No. 4:12-cv-077, 2014 WL 1334185, at *8 (D.N.D. Apr. 2, 2014).   Expect some questions on these subjects. The same applies to any purported ambiguity with respect to the Red Sky PSA. That is, if the court concludes the Red Sky PSA is ambiguous, do we need a trial or can the court decide what was intended based on the existing record.

**IT IS SO ORDERED**.

Dated this 30th day of March, 2021.

                                            */s/  Charles S. Miller, Jr.*
                                            Charles S.  Miller, Jr., Magistrate Judge
                                            United States District Court