## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

Power Energy Corporation, a North )
Dakota Corporation; Altschuld Oil, )
L.L.C., a Colorado Limited Liability )   **ORDER GRANTING**
Company; Copperhead Corporation, a )   **SUMMARY JUDGMENT OF**
North Dakota Corporation; Strata )   **DISMISSAL WITH PREJUDICE**
Resources, Inc., a Colorado Corporation; )
Michael S. Johnson, a Colorado Resident; )
Michael T. Fitzmaurice, a North Dakota )   Case No.: 1:17-cv-093
Resident; Patrick L. Butz, a North Dakota )
Resident; and Jacques F. Butz, a North )
Dakota Resident, )
　 )
　　　　　Plaintiffs, )
　 )
　　vs. )
　 )
Hess Bakken Investment II, L.L.C., )
a Delaware Limited Liability Company, )
　 )
　　　　　Defendant. )

Before the court is the motion by defendant Hess Bakken Investment II, L.L.C. ("Hess Bakken") for summary judgment. For the reasons set forth below, the motion is granted.

## I.　　BACKGROUND

### A.　　Introduction

This case is about whether one or more of plaintiffs possess (or are otherwise entitled to) an overriding royalty interest ("ORRI") in the production of oil and gas from certain lands under a lease granted in 2005 by the Department of the Interior acting through the Bureau of Land Management ("Federal Lease"). Defendant Hess Bakken is the current holder of the Federal Lease. The parties agree that Hess Bakken acquired the Federal Lease from the Hess Corporation. The two Hess entities may sometimes be referred to herein as "Hess" since the corporate distinctions are not

1

relevant to what follows.

Central to the claim of the plaintiffs that they possess or are entitled to an ORRI in the production from the lease lands in question are two agreements for the purchase of oil and gas leases that preceded the grant of the Federal Lease. The court will pick up the thread there.

**B.    The Prima Group's purchase of oil and gas leases from the Altschuld Group under the Altschuld PSA and from Strata under the Strata PSA**
**1.    The Altschuld and Strata PSAs**

On July 8, 2004, Prima Exploration, Inc. ("Prima Exploration"), Gunlickson Petroleum, Inc., Niwot Resources, LLC, Cordillera Energy Partners II, LLC, Berry Ventures, Inc., and Strata Resources, Inc. ("Strata") (collectively the "Prima Group") entered into two separate purchase and sale agreements ("PSAs") to acquire a number of oil and gas leases in Mountrail County, North Dakota.

The sellers under the two PSAs owned oil and gas leases in areas that in part overlapped with each other.  The two PSAs were similarly structured.  Both included an Area of Mutual Interest Clause ("AMI Clause") that was coordinated with and referenced the other PSA's AMI Clause.

Plaintiffs Altschuld Oil, L.L.C. ("Altschuld Oil"), Powers Energy Corporation ("Powers Energy"),[1] and Copperhead Corporation ("Copperhead") were the sellers under one of the PSAs (the "Altschuld PSA") and will be collectively referred to as the "Altschuld Group."  (Doc. No. 30-1).  The  AMI delineated in the Altschuld PSA will be referred to as the "Altschuld AMI."

Plaintiff Strata Resources, Inc. ("Strata") was the sole seller under the other PSA (the "Strata PSA").  (Doc. No. 30-2). It also was a buyer under the Strata PSA of 2% of the interest acquired by

---

[1]  The caption refers to Power Energy Corporation based on how this entity was referred to the complaint when the case was filed.  However, it appears the correct name is Powers Energy Corporation.

the Prima Group.  The AMI delineated in the Strata PSA will be referred as to the "Strata AMI."

      **2.**      **The Altschuld and Strata AMIs**

The Altschuld AMI encompassed the following lands in Mountrail County, North Dakota:

      Township 157 North, Range 91 West – All
      Township 157 North, Range 90 West – S½
      Township 156 North, Range 92 West – All
      Township 156 North, Range 91 West – All
      Township 156 North, Range 90 West – All

(Doc. No. 30-1).

The Strata AMI was broader in reach.  It encompassed the same lands as the Altschuld PSA as well as the following additional land in Mountrail County:

      Township 155 North, Range 92 West – All
      Township 155 North, Range 91 West – All
      Township 155 North, Range 90 West – All

(Doc. No. 30-2).

Under the AMI Clauses in both the Altschuld and Strata PSAs, the Prima Group had the right to purchase any new leases acquired by the sellers within one year following execution of the PSA within the AMI of the respective PSA.  For any leases acquired by the Prima Group during the same one-year period within the AMI, the Prima Group agreed to assign to the sellers under the respective PSA an ORRI in percentages that varied depending upon where the newly-acquired leases were located and other criteria.  (Doc. Nos. 30-1; 30-2).

More particularly, under the Altschuld PSA, an ORRI was due the Altschuld Group on newly-acquired leases that varied depending upon the distance from an existing Altschuld lease as follows:

•      3% on newly-acquired leases located within one mile of an existing Altschuld lease.

3

- 1% on newly-acquired leases within the Altschuld AMI but greater than one mile from an existing Altschuld lease.

These percentages were subject to adjustment based upon the percentage of the total royalty burden imposed upon the Prima Group under a schedule set forth in the Altschuld PSA.  Further, these percentages were subject to a further exception, which was that the ORRI would be only 0.5% for any lease acquired within the Altschuld AMI but within a mile of an existing Strata Lease and outside of a defined "Overlapping Area." The apparent reason for the reduction to 0.5% was due to the Strata AMI also encompassing the lands covered by the Altschuld AMI and Strata being entitled to an ORRI on the same newly-acquired lease acreage under the Strata PSA as discussed next.  (Doc. No. 30-1).

The Strata PSA's AMI provisions were largely similar but different in at least one respect. The Strata PSA provided that Strata (as the seller) was entitled to a 3% ORRI for newly-acquired leases within the Strata AMI and located within a mile of an existing Strata  Lease.  Like the Altschuld PSA, this percentage was subject to adjustment depending upon the total royalty burden suffered by the Prima Group.  Unlike the Altschuld PSA, however, no ORRI was due under the Strata PSA for newly-acquired leases within the Strata AMI but more than a mile from an existing Strata Lease.  (Doc. No. 30-2).

Finally, the Altschuld and Strata PSAs both included an "Overlapping Area of Interest" provision.  Under this provision, the "Overlapping Area" was defined to be an area where "both parties's [*i.e.*, the Altschuld Group's and Strata's] leasehold interests . . . are located within a mile of the other." (Doc. Nos. 30-1; 30-2).  Undoubtedly, the purpose for this provision was to deal with a 3% ORRI otherwise being due to both the Altschuld Group and Strata under their respective PSAs for newly-acquired leases within a mile of an existing lease.  The solution to otherwise having to pay a double ORRI was to provide that, for newly-acquired leases in the Overlapping Area, the  ORRI was to be shared equally by the Altschuld Group and Strata.

4

### C.    Acquisition of the Federal Lease by Prima Exploration

In 2005, Prima Exploration acquired the previously referenced Federal Lease from the DOI/BLM of 50% of the mineral interest in the following described property:

> Township 155 North, Range 90 West
> Section 6:      Lots 4, 5, 6,
>                 SWNE1/4, NESW1/4, ,N1/2NE1/4
> Section 27:     S1/2
> Section 28:     NW1/4
> Section 33:     NE1/4

(Doc. No. 30-3).  Prima Exploration's acquisition of the Federal Lease was within the one-year period set forth in the Altschuld and Strata PSAs to which it was one of the purchasers along with the other members of the Prima Group.

Relevant to what follows:

•       None of the Federal Lease acreage was within the Altschuld AMI.  However, the "Section 6 acreage" of the Federal Lease was within one mile of an existing Altschuld Lease.

•       All of the Federal Lease acreage was located within the Strata AMI.  But, while the Section 6 acreage was within a mile of an existing Strata Lease,  the Sections 27, 28, and 33 acreage may not have been.

The parties to this case agree that the Section 6 acreage has been treated as falling within an Overlapping Area even though it was outside of the Altschuld AMI.  Undoubtedly, this is because Prima Exploration later conveyed a 3% ORRI in the production from the Section 6 acreage to the Altschuld Group and Strata as discussed in a moment.  This may have been a generous reading of the Altschuld PSA.

As discussed later, one of the primary questions in this case is whether the Altschuld Group

was entitled to a share of an ORRI in the production from the Sections 27, 28, and 33 Federal Lease acreage because the Section 6 acreage was located within the Overlapping Area.  There is also a similar, but somewhat different, question with respect to whether Strata was entitled to an ORRI with respect to the lease acreage outside of Section 6.  That is, whether Strata was entitled to an ORRI on all of the lease acreage because the Section 6 acreage was within a mile of an existing Strata Lease or only an ORRI on the Section 6 acreage if the Sections 27, 28, and 33 acreage was not within a mile of an existing Strata Lease.[2]

> **D.**     **Conveyance by Prima Exploration of an ORRI to Strata and the Altschuld Group for the Section 6 acreage and the lack of a *contemporaneous* conveyance of an ORRI for the remaining lands under the Federal Lease.**

On March 13, 2006, Prima Exploration conveyed a 3% ORRI for the Section 6 acreage under the Federal Lease as follows:  50% to Strata and the other 50% to the respective members of the Altschuld Group (*i.e.*, 16.6666% to each member).  (Doc. No. 30-4).  Plaintiffs have not presented any evidence of a contemporaneous conveyance of an ORRI for the remaining acreage under the Federal Lease.  Prima Exploration did make such a conveyance years later, but this was well after intervening conveyances impacting the interests under the Federal Lease, including a sale of the Federal Lease and assignment of the Altschuld and Strata PSAs to Hess.

> **E.**     **Prima Exploration's assignment of a 69.424% working interest in the Federal Lease to members of the Prima Group, including Strata**

On April 13, 2006, Prima Exploration assigned a share of the working interest in the Federal Lease to the other members of the Prima Group and Marshall Resources, LLC ("Marshall

---

[2]  The "part-in, part-out" and "contiguous acreage" issues that may arise from AMI Clauses lacking the necessary specificity has been discussed in a number of journal articles.  See, e.g., Mark T. Nesbitt, Area of Interest Provisions—Two Edged Swords, 35 Rocky Mountain Law Institute 21 (1989);  Dante L. Zarlengo, Area of Mutual Interest Clauses Regarding Oil and Gas Properties:  Analysis, Drafting, and Procedure, 28 Rocky Mountain Law Institute 14 (1982).

Resources") using a DOI/BLM-prescribed assignment form.  Pursuant to that assignment, Prima

Exploration retained 30.576% of the working interest and conveyed the remaining 69.424% to the

other members of the Prima Group (including Strata, which received its 2% share) and Marshall

Resources. The assignment document states under a column of "Percent of Overriding Royalty or

Similar Interests" that "None" were reserved and that there was previously reserved or conveyed a

3% interest but without further explanation as to whether that was for all or part of the lease acreage.

(Doc. No. 35-4).

> **F.**  **Prima Group's sale of oil and gas leases, including the Federal Lease, to Hess
> Corporation pursuant to the Red Sky PSA along with an assignment of the
> Altschuld and Strata PSAs.**

On May 16, 2007, the Prima Group, Marshall Resources, and Hess Corporation

consummated the Red Sky Purchase and Sale Agreement ("Red Sky PSA").  (Doc. No. 61).  Under

the Red Sky PSA, the Prima Group (which included Strata) and Marshall Resources sold all of their

right, title, and interest in a package of oil and gas leases to the Hess Corporation.  Listed first in an

Exhibit A-2 schedule of conveyed leases was the Federal Lease.  (Id. at p. 43).  In addition to

describing the lands covered by the Federal Lease, the schedule stated that the  Lease "acreage" for

the Federal Lease was 895.98 "Gross" and 447.99 "Net."  Most likely, this was because the Federal

Lease was only for 50% of the mineral interest. The schedule goes on to describe the "Royalty" as

0.1250%, the "ORRI" as 0.0300, and the "NRI" [net revenue interest] as 0.8450%.

The Red Sky Agreement also included an assignment to Hess Corporation of certain

agreements, including the Altschuld and Strata PSAs.  (Doc. No. 61).  Notably, the schedule of

assigned contracts in the "Remarks" section stated that both the Altschuld and Strata PSAs had

expired but that the "ORR[I] survives as to Extensions/Renewals."   (Id. at p. 105).

Pursuant to the Red Sky PSA, the Prima Group (including Strata) and Marshall Resources executed two assignments of the interests being sold to Hess. One assignment document entitled "Assignment and Bill of Sale" dated May 1, 2007, was recorded with the county register of deeds. (Doc. No. 35-7). The form of this assignment was an exhibit to the Red Sky PSA. (Doc. No. 61). That is, its language was negotiated at the time of the consummation of the Red Sky PSA and was part of the agreement. This assignment covered all of the interests being acquired by Hess, both leases and contracts.

The other assignment document was a prescribed DOI/BLM form entitled "Assignment of Record Title Interest in a Lease for Oil and Gas or Geothermal Resources" effective August 1, 2007 that was executed to meet government requirements for assignment of the Federal Lease specifically. (Doc. No. 35-8). The court will return to the particular language of these assignment documents later.

> **G.** **The complaints by Powers Energy beginning in 2011 over the lack of payment of an ORRI on the Sections 27, 28 and 33 Federal Lease acreage and the email communications about that subject with Hess over the next several years**

Beginning in 2011, the principals of Powers Energy (Powers Energy having been part of the Altschuld Group) began questioning the lack of payment of an ORRI on production from wells under the Federal Lease on acreage outside of the Section 6 acreage, *i.e.,* the Sections 27, 28, and 33 acreage. (Doc. Nos. 35, pp. 5–8). Over the next several years, Powers Energy communicated with representatives of Hess about the lack of payment through a number of email exchanges. (Id.; Doc. Nos. 35-9; 35-10; 35-11).

At one point, a draft of an assignment of a 3% ORRI from Hess to plaintiffs for the Sections 27, 28, and 33 acreage lying outside of the Overlapping Area was prepared. (Doc. No. 35-13).

Further, there is some evidence that the principals of Powers Energy were led to believe for a period of time by some at Hess that an assignment would be forthcoming.  (Doc. Nos. 35, pp. 5–8; 35-9, pp. 7–15; 35–10).

In making its case for entitlement to an ORRI with respect to the Sections 27, 28, and 33 Federal Lease acreage, Powers Energy pointed to: (1) the assignment to the Altschuld Group and Strata of an ORRI on the Section 6 acreage pursuant to which Powers Energy was being paid a share of the ORRI; and (2) the reference to a 3% ORRI in the schedule of leases in the Red Sky PSA whereby Hess acquired the Federal Lease.  (Doc. Nos. 35-9, pp. 15–16; 35-11, p. 3).  At no point in the emails from the Powers Energy principals do they reference the 2004 Altschuld and Strata PSAs, much less explain why under those agreements an ORRI was due on lease acreage outside of the Overlapping Area.  In fact, there is no mention of an AMI or Overlapping Area.

In 2014, Hess advised Powers Energy it was not persuaded an ORRI was due, stating it had commissioned a records search when it acquired the Federal Lease that had not revealed a conveyance of an ORRI on the Federal Lease acreage other than Section 6 acreage.  (Doc. No. 35-11, pp. 3, 6).  Hess advised Powers Energy it would need to see the actual document that purportedly created the ORRI, stating at one point in September 2014 that its legal department wanted to see a "copy of the Letter Agreement dated July 8, 2004."  Hess asked  Powers Energy to provide a copy. (Doc. No. 35-11, pp. 1–2).

It appears from the email exchanges between Powers Energy and Hess in October 2014 that Powers Energy did not then have a copy of the 2004 letter agreement (*i.e.*, the Altschuld PSA) that Hess was requesting and that it reached out to Prima Exploration (a part of the Prima Group under the 2004 Altschuld and Strata PSAs and the initial purchaser of the Federal Lease) for a copy.

9

However, it appears that Prima Exploration also did not then have a copy.  This is because Powers Energy responded to Hess's request for the 2004 letter agreement by stating that the President of Prima Exploration could tell Hess what was contemplated but that Prima Exploration had not retained a copy of the agreement when it transferred all of its files to Hess when it sold the Federal Lease to Hess as part of the Red Sky PSA.  Powers Energy asked Hess whether it had the files that Prima Exploration transferred to Hess.  Hess responded that it did have the files but stated it had reviewed them and could not find the document.  (Doc. No. 35-11, pp. 7–10).[3]

At that point, the President of Prima Exploration communicated directly by email with Hess on October 17, 2014, stating the following:

> It was the agreement with Jim Powers and Prima Exploration's intention to assign the ORRI on all of the leasehold.  We have searched our files for the agreement, but it appears all of our files were sent to Hess when we sold the leasehold to Hess, per our agreement with Hess.

(Doc. No. 35-11, p. 7).  This is the last email exchange in the record addressing the subject of an ORRI on the Sections 27, 28, and 33  lease acreage. Apparently, Prima Exploration's expression of its purported intent was not enough for Hess because no conveyance of an ORRI with respect to Sections 27, 28, and 33 was forthcoming.

As discussed next, this is when Powers Energy in November 2014 obtained an assignment of an ORRI with respect to the Sections 27, 28, and 33 acreage lying outside of the Overlapping Area.  However, before leaving the emails, what is notable about them is that throughout the exchanges there is no reliance upon the actual language of the 2004 Altschuld and Strata PSAs by either Powers Energy in claiming an ORRI was due or by Hess in stating it was not persuaded.

---

[3]  Why Hess had trouble locating the relevant the 2004 Altschuld PSA was never explained.  One would think that it had a copy since the Altschuld PSA was one of the agreements specifically listed in the schedule of agreements being assigned to Hess under the Red Sky PSA.

Further, the same is true with respect to the statement by the President of Prima Exploration in his October 17, 2014 email as set forth above.  That is, his statement of what was Prima Exploration's intent some ten years earlier in 2004 was made without the benefit of having the 2004 Altschuld and Strata PSAs in front of him.

     **H.**     **Prima Exploration's November 2014 assignment of an ORRI on the Sections 27, 28, and 33 Federal Lease acreage and the commencement of this action**

After it became apparent that Hess Corporation would not pay an ORRI on the Sections 27, 28, and 33 acreage, plaintiffs (including Strata) on November 14, 2014, obtained an assignment from Prima Exploration of a 3% ORRI on the production from the Sections 27, 28, and 33 lease acreage. (Doc. No. 35-12).  On May 8, 2017, plaintiffs commenced this action, claiming they are owed a 3% ORRI on that lease acreage and seeking payment on the ORRI dating back to the date of first production.

**II.**     <u>**DISCUSSION**</u>

     **A.**     **Plaintiff members of the Altschuld Group are *not* entitled to an ORRI on the Federal Lease lands outside of the Overlapping Area**

Plaintiffs contend that the "Overlapping Area of Interest" provision in the Altschuld PSA, together with the remainder of the Altschuld AMI, is at least ambiguous with respect to whether the Altschuld Group was entitled to a share of an ORRI on the Sections 27, 28, and 33 Federal Lease acreage that lies outside of the Overlapping Area due to the fact that part of the Section 6 acreage was within the Overlapping Area.  According to plaintiffs, since the language is ambiguous, there needs to be a trial.

In <u>Pamida, Inc. v. Meide</u>, 526 N.W.2d 487 (N.D. 1995), the North Dakota Supreme Court summarized the primary rules governing interpretation of contracts as well as dealing with

ambiguity as follows:

> The construction of a written contract to determine its legal effect is a question of law. Red River Human Services Found. v. Department of Human Services, 477 N.W.2d 225 (N.D.1991); Production Credit Ass'n v. Foss, 391 N.W.2d 622 (N.D.1986); Sorlie v. Ness, 323 N.W.2d 841 (N.D.1982). A contract is to be interpreted to give effect to the mutual intention of the parties at the time of contracting. Section 9–07–03, N.D.C.C. Under § 9–07–04, N.D.C.C., the intention of the parties to a written contract is to be ascertained from the writing alone, if possible. If executed documents are unambiguous, parol evidence is not admissible to contradict the terms of the written agreement. Production Credit Ass'n v. Foss, supra. If a written contract is ambiguous, extrinsic evidence can be considered to clarify the parties' intent. First Nat'l Bank & Trust Co. v. Scherr, 435 N.W.2d 704 (N.D.1989). "[W]here the contract is clear and unambiguous there is no reason to go further." Hoge v. Burleigh County Water Management Dist., 311 N.W.2d 23, 27 (N.D.1981). Whether or not a contract is ambiguous is a question of law. Vanderhoof v. Gravel Products, Inc., 404 N.W.2d 485 (N.D.1987); First Nat'l Bank & Trust Co. v. Scherr, supra. " An ambiguity exists when rational arguments can be made in support of contrary positions as to the meaning of the term, phrase, or clause in question." Vanderhoof v. Gravel Products, Inc., supra, 404 N.W.2d at 491 If the parties' intentions can be ascertained from the writing alone, then the interpretation of the contract is entirely a question of law, and we will independently examine and construe the contract to determine if the district court erred in its interpretation of it. Sorlie v. Ness, supra. "A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates." Section 9–07–12, N.D.C.C. "However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract." Section 9–07–13, N.D.C.C.

Id. at 490. This remains the governing law in North Dakota today. See, e.g., Hess Bakken Investments II, LLC v. AgriBank, FCB, 2020 ND 172, ¶ 7, 946 N.W.2d 746; Flaten v. Couture, 2018 ND 136, ¶ 14, 912 N.W.2d 330 (quoting Pamida).

The relevant portions of the Altschuld PSA are the following:

**AREA OF MUTUAL INTEREST**

An Area of Mutual Interest ("AMI") is hereby established by this Agreement. The AMI shall consist of the following described lands:

Township 157 North, Range 91 West - All
Township 157 North, Range 90 West- South One-Half
Township 156 North, Range 92 West- All
Township 156 North, Range 91 West - All
Township 156 North, Range 90 West-All

The AMI shall expire one year from the date of this Agreement.

Any additional oil and gas leases acquired in the AMI ("AMI Leases") during the effective date of the AMI by either Seller or Buyer shall be subject to the terms and . conditions described below. Seller agrees to offer any AMI Leases it acquires to Buyer during the effective date of the AMI.

## OUTSTANDING OFFERS OF THE SELLER

In addition to the Subject Leases, Buyer acknowledges that Seller has tendered offers to lease to various mineral owners of lands within the AMI. Seller agrees to provide Buyer a schedule of said offers concurrent with the date of this Agreement. Said schedule shall hereby be incorporated into this Agreement as Exhibit "B" after being reviewed and acknowledged by the Buyer. Buyer agrees to include in this Agreement any outstanding offers represented by Seller on said schedule that have been made and accepted by said mineral owners for a period of 30 days from the date of this Agreement. Any oil and gas leases that are accepted by said mineral owners after 30 days of this agreement shall be considered as "Post Closing Leases" and are discussed below.

* * * *

## ADDITIONAL ACREAGE ACQUIRED IN AMI

Seller agrees to consult with Buyer prior to making any offers to purchase any AMI Lease. Seller agrees that Buyer has the right, but not the obligation, to purchase any AMI Lease acquired by Seller. Such AMI Lease shall be offered to Buyer at the same price Seller has acquired such AMI Lease. Buyer agrees to assign to Seller an overriding royalty interest in such AMI Lease as described below.

Buyer agrees to assign an overriding royalty interest to Seller in and to any AMI Leases acquired for a period of one year from the date of this Agreement and as further defined below.

Buyer shall assign an overriding royalty interest to the Seller in and to any AMI Leases, renewals or extensions acquired by the Buyer that is located within one mile of any Subject Lease in the following proportions:

| Total Royalty Burden to Buyer | Overriding Royalty to Seller (*) |
| --- | --- |
| 12.5% | 3.00% of 8/8ths |
| Greater than 12.5% up to 15% | 2.00% of 8/8ths |
| Greater than 15% but not more than 17% | 1.00% of 8/8ths |
| Greater than 17% but less than 18% | 82% NRI less the royalty burden |

In any area within the AMI, where the additional leasehold acquired by Buyer is located greater than one mile from the Subject Leases, the Buyer shall assign an overriding royalty interest to Seller of 1.00% with the exception that additional leasehold acquired by Buyer located within one mile of any existing Strata Resources, Inc: lease as shown on Exhibit "A" and not located within the area defined herein below as the Overlapping Area of Interest, Seller shall receive an assignment from Buyer of an overriding royalty interest equal to 0.5%. All assignments of overriding royalty shall be proportionately reduced to the interest owned.

13

In no event shall Seller be entitled to an assignment of overriding royalty on any AMI Leases that would result in a burden to the Buyer in excess of an 82% net revenue interest. In no event shall Seller be entitled to an assignment of overriding royalty interest from the Buyer on leasehold fr acquires or earns through a farmout, support agreement, or operations conducted by it, including seismic or drilling.

## STRATA RESOURCES INC. - OVERLAPPING AREA OF INTEREST

Seller acknowledges that Buyer is also acquiring interests in various oil and gas leases owned by Strata Resources Inc. ("Strata"). Some of the oil and gas leases owned by Strata, are located within and around the boundaries of the AMI of this Agreement. Buyer shall provide to Seller and to Strata a map of both parties' leasehold interests identifying where such interests are located within one mile of the other. This area shall be defined as the "Overlapping Area." Where any oil and gas lease is acquired in the Overlapping Area, during the effective date of the AMI herein, the overriding royalty assigned by the Buyer, as described in the "Additional Acreage Acquired in the AMI" paragraphs hereinabove, shall be assignable to the Seller and to Strata in equal proportions to the Seller and Strata.

(Doc. No 30-1, pp. 3, 5–6).

The court disagrees with plaintiffs that the Altschuld PSA is ambiguous with respect to whether the Altschuld Group's entitlement to a share in an ORRI for leases with some acreage within the Overlapping Area extends just to the lease acreage within the Overlapping Area or to all of the lease acreage. True, there is nothing in the language of the Altschuld PSA that explicitly states that lease acreage outside of the Overlapping Area is not subject to an Altschuld Group's share. Further, the references to "lease" in the foregoing provisions standing alone could refer to all acreage covered by the lease. However, the fact that a term might be susceptible to different meanings does not render an agreement ambiguous if the intent of the parties can be determined from the remainder of the agreement. Under North Dakota law that is the starting point for the court's inquiry. It is also the ending point under the authority previously cited if the court concludes the intent of the parties can reasonably be determined from the agreement itself.

Here, the court believes the mutual intent of the parties can be determined when the entirety of the relevant language of the Altschuld PSA is considered. That being: the Altschuld Group was

entitled to share in the ORRI only on lease acreage within the specifically delineated areas in the Altschuld AMI and  not lease acreage outside of the designated areas.  The following supports this conclusion even if no single point is dispositive:

- The  Altschuld PSA stating that the entitlement to an ORRI applies to leases and leasehold interests acquired "in" the AMI or Overlapping Area..

- The interests in the acquired leases being divisible.  That is, it is possible to convey an ORRI on the production from some of the leasehold lands and not others. Restricting the ORRI to the lease acreage within the AMI and/or the Overlapping Area is consistent with the parties having designated a specific AMI as well as to any Overlapping Areas.

- The title to one of the AMI paragraphs in the Altschuld PSA being "Additional Acreage Acquired In AMI."  That is, the use of the words "Additional Acreage" suggesting the entitlement to an ORRI  applies only to the lease acreage within the AMI.

- The very detailed and specific provision of the coordinated AMI provisions of the Altschuld and Strata PSAs with respect to when the Altschuld Group and Strata are entitled to an ORRI.  Within the Altschuld AMI, the Altschuld Group's entitlement to an ORRI on a newly-acquired leasehold interest varies depending upon whether it is within in a mile of an existing Altschuld lease or is in an Overlapping Area. Likewise, under the Strata PSA, Strata is entitled to an ORRI within the Strata AMI only if the newly-acquired lease interest is within a mile of an existing Strata Lease but not otherwise.  Here, the Sections 27, 28, and 33 lease acreage is both outside of

the Altschuld AMI and several miles from what the parties have apparently treated

as being a qualifying Overlapping Area.  Reading the relevant language as entitling

the Altschuld Group to an ORRI outside of the Altschuld AMI and not within an

Overlapping Area is incongruous with the detailed AMI provisions of the Altschuld

and Strata PSAs.  Or, to put it another way, the court is convinced the relevant

language would have been written differently if there was an intent that the Altschuld

Group would be entitled to an ORRI on newly-acquired lease acreage outside of its

AMI or even the Overlapping Area but within the Strata AMI for which it had no

mutual interest.

In short, while the proffered interpretation by the Altschuld Group is a possible reading of the

relevant language, it not a reasonably plausible one given the foregoing.[4]

---

[4]     But, even if the court is wrong in concluding there is no ambiguity, the court in this case is also the factfinder given that a jury trial has not been demanded.  And here, plaintiffs have not come forward with extrinsic evidence that would be sufficient to result in the court potentially reaching a different conclusion if the court was to consider the extrinsic evidence that is in the record.  Further, even if plaintiffs had no obligation to come forward with all relevant extrinsic evidence now in response to the motion for summary judgment, the court is skeptical that any more relevant evidence exists that would broker a different construction.

      The extrinsic evidence of record that plaintiffs would point to in support of their interpretation and the problems with it are the following:

•        The expression by the principals of Powers Energy  beginning in 2011that they believed Powers Energy and the other members of the Altschuld Group are entitled to an ORRI on the Federal Lease acreage lying outside of the Overlapping Area.  This expression of belief comes long after the execution of the execution of the Altschuld PSA, is from only one of the members of the Altschuld Group, and is not tethered to the contract  language that purportedly created the entitlement to the ORRI.  Further, as a general matter, after-the-fact unilateral expressions of intent are of minimal, if any, relevance of the *mutual* intent of the parties at the time a contact is entered into under North Dakota law—at least in the undersigned's view.  See Sickler v. Lone Tree Energy & Associates, No. 4:12-cv-077, 2014 WL 1334185, at *8 (D.N.D. Apr. 2, 2014).

•        The October 17, 2014 email from the President of Prima Exploration that it was Prima Exploration's "intention to assign the ORRI on all lands." However, as noted earlier, this appears to have been based upon a recollection of what had transpired some ten years earlier and without the benefit of first reviewing the actual language of the 2004 Altschuld and Strata PSAs.  Further, it suffers from the same problem of being an after-the-fact unilateral expression of intent.  Finally, in terms of the intent of the parties to the Altschuld and Strata PSAs, Prima Exploration was only one of the purchasers. Included in the Prima Group as  purchasers, as noted earlier, were Gunlickson Petroleum, Inc., Niwot Resources, LLC, Cordillera Energy Partners II, LLC, Berry Ventures, Inc., and Strata.

The court's conclusion that the Altschuld Group's contractual right to share in an ORRI in any newly-acquired lease acreage in an Overlapping Area did not extend to acreage under the Federal Lease lying outside of the Overlapping Area disposes of the claims of the plaintiff Altschuld Group members given as discussed later that they did not obtain an interest by the 2014 assignment from Prima Exploration. Strata, however, is also a plaintiff and the foregoing does not necessarily dispose of Strata's possible entitlement to an ORRI, which is addressed next. The same applies to plaintiff Johnson. While the pleadings are not clear, it appears he acquired the interest upon which he bases his claim to an ORRI from Strata.

## B.    Strata is not now entitled to an ORRI on the Federal Lease lands located outside of the Overlapping Area

In its briefing on the motion for summary judgment, Hess assumed that Strata was entitled to an ORRI on the Sections 27, 28, and 33 acreage and argued that any entitlement that Strata might

---

- The references in the Federal Lease and subsequent conveyances of it to a 3% ORRI. These references are consistent with the 3% ORRI being limited to the Section 6 acreage.
- The November 2014 conveyance of a 3% ORRI in the Federal Lease acreage outside of the Overlapping Area by Prima Exploration to plaintiffs. This conveyance appears to have been made by Prima Exploration shortly after the email by its President discussed above and suffers from the same problems in terms of being probative evidence of the intent of the parties when the Altschuld and Strata PSAs were consummated.

If the court was to consider extrinsic evidence, far more persuasive in terms of the mutual intent of the parties (particularly given that there were nine separate parties to the Altschuld PSA) are : (1) the contemporaneous conveyance by Prima Exploration to the Altschuld Group and Strata of their respective shares of the ORRI that is limited to the Section 6 acreage lying within the Overlapping Area; (2) the lack of a contemporaneous conveyance to the Altschuld Group of a share of the ORRI for the remaining Federal Lease acreage outside of the Overlapping Area; and (3) the lack of any contemporaneous objection by the several parties making up the Altschuld Group or by Strata that an ORRI in the Federal Lease acreage lying outside of the Overlapping Area had not been conveyed when the ORRI for the Section 6 acreage was conveyed. All of this evidence supports what is the most straightforward reading of the language in dispute in this case, which is that the Altschuld Group was not entitled to a share of the ORRI for the Sections 27, 28, and 33 Federal Lease acreage lying outside of both any Overlapping Area and the Altschuld AMI.

Finally, if plaintiffs possessed more compelling evidence than what they can point to in the record (*e.g.*, a writing contemporaneous to the execution of the Altschuld PSA that sets forth how the parties contemplated the AMI provisions would work and supportive of their position), surely plaintiffs after the almost four years this case has been pending and the opportunity for discovery would have located it and submitted it to the court in response to the motion for summary judgment.

have to an ORRI was extinguished or transferred to Hess as part of the Red Sky lease sale. The court agrees and will discuss that first. However, it also appears likely that Strata was not entitled to a 3% ORRI on the Sections 27, 28, and 33 acreage in the first instance. While the court did allude to that possibility in written questions it posed prior to argument on Hess's motion for summary judgment, the court will discuss the issue but not reach a final conclusion given that plaintiffs may not have had an adequate opportunity to fully weigh in on it.

1.      **Whatever ORRI interest in the Sections 27, 28 and 33 acreage Strata possessed or was entitled to as a matter of contract was assigned to Hess as part of the Red Sky transaction**

In resetting the table, the Strata PSA contemplated that, if any of the Prima Group purchasers acquired qualifying lease acreage within the Strata AMI within one year, there would be a subsequent conveyance of an ORRI to Strata. The only conveyance of an ORRI prior to the sale of the Federal Lease to Hess as part of the Red Sky lease sale that plaintiffs have been able to produce (either "of record" with the Mountrail County Register of Deeds or DOI/BLM or unrecorded) is Prima Exploration's assignment of a 3% ORRI to Strata and the Altschuld Group with respect to the Section 6 acreage.

Hence, at the time of the sale of leases to Hess by the Prima Group members (including Strata) pursuant to the Red Sky PSA, what Strata possessed with respect to the Sections 27, 28, and 33 Federal Lease acreage was a share of the working interest it had acquired pursuant to a separate assignment from Prima Exploration, a share of an ORRI on the Section 6 acreage of the Federal Lease, and the *possibility* it had a contractual right to a conveyance of an ORRI on the production from the Sections 27, 28, and 33 acreage.

Following consummation of the Red Sky PSA and pursuant to it, the Prima Group members (including Strata) made a specific assignment of the Federal Lease to Hess to satisfy DOI/BLM's requirements. This assignment stated the following in bold letters: "IT IS THE INTENT OF ASSIGNORS TO CONVEY ALL OF THE RIGHT, TITLE, AND INTEREST WHICH THEY OWN IN THE ABOVE DESCRIBED LAND WITHOUT RESERVATION." The assignment

further stated that the percentage of interest being conveyed was 100%, that no ORRI or similar interest was reserved, and that previously reserved or conveyed ORRIs or similar interests were "Those of Record." (Doc. No. 35-8).

Similarly, the more general assignment of the lease interests pursuant to the Red Sky PSA that was recorded with the Mountrail County Register of Deeds provided for the assignment of all of the Prima Group's (including Strata's) right, title and interest in the "Lands" that are the subject of the scheduled leases, including the Federal Lease, together with all "production payments and interests attributable allocable to the Wells and leasehold estates insofar as they cover the Lands (the 'Leases) . . . ." Further, the assignment assigned any contractual rights that are "in any way belonging to, incidental to, or appertaining to the property, interests, and rights" otherwise being conveyed. (Doc. No. 35-7).

The court concludes that the foregoing assignments of all "right" and "interest" in the Federal Lease acreage as well as the assignment of contract rights related to the leases extinguished any contractual claim to an ORRI in the Sections 27, 28 and 33 Federal Lease acreage that Strata may have possessed or at least transferred it to Hess. Further, even if the Strata PSA could itself be construed as a conveyance of a future interest, the interest that Strata acquired was assigned to Hess.

Strata contends that the Red Sky PSA provides that, in the event of a conflict between the assignments and the PSA, the latter controls. Strata argues that the reference to a 3% ORRI and a 0.8450 NRI interest with respect to the Federal Lease in the Red Sky PSA's Exhibit A-2 listing of leases being conveyed meant either that Hess was only acquiring the specified NRI or that it was some sort of exception from the sale or reservation of an ORRI due Strata pursuant to the Strata PSA. Strata contends these references in the lease schedule of the Red Sky Agreement constitute

a conflict and that the Red Sky PSA language controls.

The court disagrees.  The reference to the 3% ORRI and 0.8450 NRI in the schedule of leases attached to the Red Sky PSA is consistent with a 3% ORRI having been conveyed with respect to the Section 6 lands under the Federal Lease.  It is also consistent with the 3% ORRI and specified NRI being only what the sellers were warranting and not a limitation upon what was agreed to be sold when one works through the specific language of the Red Sky PSA.  More particularly:

• Section 1 of the Red Sky PSA provides that "Sellers agree to sell and convey and Buyer agrees to purchase and pay for the Interests (as defined in Section 1.2), subject to the terms and conditions of this Agreement." It defines "Interests" in Section 1.2 broadly to include "all of Sellers' right, title and interest" in "Leases" consisting of "The mineral and leasehold estates created by the leases, licenses, permits and other agreements described in Exhibit A-2, INSOFAR BUT ONLY INSOFAR as they cover and relate to the lands described in Exhibit A-2" with Exhibit A-2 listing the lands covered by each of the conveyed leases. In addition, the  "Interests" conveyed under Section 1.2  expressly includes the Sellers' right, title and interest to a set of "Contracts" "set forth in Exhibit A-3, which includes both the Strata Agreement and the Altschuld Agreement.  Finally, in Section 1.3, the Red Sky PSA lists what interests are being reserved and excepted from the sale and conveyance of interests and there is no mention of Sellers (including Strata) retaining, reserving, or excepting any ORRI.

• Section 2.1 provides that purchase price is allocated "based on Sellers delivering not less than 56,196 mineral leasehold acres *with Sellers retaining no overriding royalty*

20

*interest therein*." (emphasis added).

Notably, there is no mention in the foregoing sections to previously reserved or conveyed ORRIs or that the interest Hess was acquiring was limited to any specified NRI. Where there is a reference is in Section 5 addressing title matters that allow for permitted encumbrances and also provide a floor for what is being conveyed and price adjustments to compensate Hess if it received less than what is guaranteed.

When one considers the totality of the Red Sky PSA, it appears clear that the references in the Exhibit 2 schedule of leases to previously reserved or conveyed ORRIs and the specified NRIs was not for the purpose of limiting what was being conveyed. Rather, it was for the purpose of identifying potential permitted encumbrances and setting a baseline for any adjustments required to what was being conveyed.[5]

> **2.     It appears likely that Strata was not entitled to an ORRI on the production from the Sections 27, 28, and 33 lease acreage in the first instance**

The AMI Clauses of the Strata PSA are almost identical in form to those of the Altschuld PSA. Like the portions of the Altschuld PSA as set forth earlier, the Strata AMI provisions refer to leases acquired "in" the AMI. Further, as with the Altschuld PSA, the title of one of the paragraphs of the Strata PSA refers to additional "acreage" acquired in the AMI. Finally, the Strata PSA refers

---

[5] The pleadings in this case limit what is in dispute to whether an ORRI interest was created or is contractually owed on production from Sections 27, 28, and 33. Out of curiosity, the court inquired during oral argument about what became of Strata's share of the 3% ORRI in the production from the Section 6 acreage that it acquired from Prima Exploration in terms of whether Strata and any of its successors were being paid on that interest or whether the parties had treated that interest as having been conveyed to Hess. Counsel for both plaintiffs and defendant stated they did not know. Hess's counsel stated the answer would take some digging in that a third party operator(s) is the one making payments on the relevant interests and it would take some analysis to determine what the particular payments encompass given the numerous interests and wells. To be clear, the court is making no ruling with respect to the ORRI that was created with respect to the Section 6 acreage.

to the Altschuld Group PSA and has comparable provisions addressing overlapping areas of interest. Unlike the Altschuld PSA, however, Strata was not entitled to an ORRI on all newly-acquired lease acreage within the Strata AMI—not even an ORRI of reduced percentage. Rather, under the Strata PSA, Strata was only entitled to an ORRI if the newly-acquired lease acreage was within the Strata AMI and within one mile of an existing Strata Lease.

In this case, while the Section 6 acreage of the Federal Lease was within a mile of an existing Strata Lease, there does not appear to have been an existing Strata lease that was within a mile of the Sections 27, 28, and 33 acreage. The map that was part of the Strata PSA that depicts the existing Strata leases shows the nearest lease acreage to be in the SE/14 of Section 17 in the same township as the Sections 27, 28, and 33 acreage. This lease acreage, while abutting up to the radius of a one-mile dividing line, is technically not "within a mile" of the nearest acreage in Section 28. If the only existing Strata Lease acreage was in the SE1/4 of Section 17 and if this lease acreage is considered to be not "within" a mile of the Sections 27, 28, and 33 lease acreage, this creates a part-in/part-out issue similar to the one dealt with above with respect the Altschuld Group. That is, the Section 6 Federal Lease acreage was within a mile of an existing Strata Lease but not the Sections 27, 28, and 33 acreage.

However, there is a difference from the Altschuld part-in/part-out issue. With respect to the Altschuld Group's claim, the Sections 27, 28, and 33 acreage was not within either the Altschuld AMI or an Overlapping Area.. With respect to Strata's claim, the Sections 27, 28, and 33 acreage is at least within the Strata AMI.

While perhaps a closer question, it does appear the mutual intent of the parties can reasonably be determined from the language of the Strata PSA alone and that there is no ambiguity.

While it is possible to literally read the Strata PSA to provide for an ORRI for the Sections 27, 28 and 33 acreage, this arguably is not a reasonably plausible construction for the same reasons expressed earlier with respect to the Altschuld Group's claim when considering the particular language employed and the structure of the agreement.[6]

### C.    The Altschuld Group and Strata did not obtain an interest by the 2014 conveyance from Prima Exploration because Prima Exploration had nothing to convey

As discussed earlier, Strata Exploration did attempt to convey a 3% ORRI in the Sections 27, 28, and 33 acreage to the Altschuld Group and Strata in 2014.  However, Prima Exploration was one of the sellers in the Red Sky transaction and had by that date assigned whatever interest it possessed to Hess.  Hence, in 2014, it had nothing to convey.

With respect to the contention that the 2014 assignment was some sort of after-the-fact "curative assignment," there was nothing to cure with respect to the Altschuld Group since it was not entitled to an ORRI on the Sections 27, 28, and 33 lease acreage and the same was likely true as to Strata. Further, any contractual entitlement to  an ORRI or other interests held by Strata had been assigned to Hess.

### D.    Claims of Michael Johnson, Michael T. Fitzmaurice, Patrick Butz, and Jacques Butz

While the foregoing disposes of any claims of the Altschuld Group and Strata, Michael Johnson, Michael T. Fitzmaurice, Patrick Butz, and Jacques Butz are also named plaintiffs in this

---

[6]  But, even if that is not the case and there is an ambiguity, the extrinsic evidence in the record favors the construction limiting the right to an ORRI to the lease acreage within one-mile of an existing Strata Lease.  Again, most persuasive is what occurred immediately following Prima Exploration's acquisition of the Federal Lease.  That is, the assignment by Prima Exploration of the 3% ORRI only with respect to the Section 6 acreage in 2006 and there being no evidence of any complaint by Strata that it did not get all that it had bargained for in 2004 until the filing of this action in 2017.

case.

There is nothing in the amended complaint or otherwise in the record that specifically explains how and when plaintiff Michael Johnson acquired an interest upon which he bases his claim to an ORRI on the production from the Sections 27, 38, and 33 lease acreage.  However, it appears from the email evidence discussed earlier and the percentage of ORRI that Johnson claims in the amended complaint relative to Strata's claim that he acquired his interest from Strata and that this was well after the sale of the Federal Lease and the assignment of the Strata PSA to Hess.  When the court suggested to plaintiffs' counsel during the hearing on the motion for summary judgment that this was what the record indicated, he did not dispute it.  That being the case, any claim that plaintiff Michael Johnson might have fails because Strata had already conveyed whatever interest it possessed to Hess.  It also fails due to the failure in response to the motion for summary judgment to come forward with evidence demonstrating an entitlement to an  ORRI and that there are fact issues to be tried with respect to his claim.

The complaint and the record are also clearly devoid of any explanation of when or how plaintiffs Michael T. Fitzmaurice, Patrick Butz, and Jacques Butz acquired an interest that entitled them to an ORRI.  The court suspects that they are the successors-in-interest to Copperhead which was one of the Altschuld Group sellers under the Altschuld PSA but has not been named as a plaintiff in this action.  If that is correct, then any claim that these plaintiffs might have fails for the same reasons that the Altschuld Group's claim fails.   Also, their claims  fails because of the failure now to come forward with evidence demonstrating they have a claim and that there are fact issues to be tried with respect to it.

**E.      Additional Hess defenses for which the court makes no rulings**

Hess makes two arguments for why any outstanding entitlement to an ORRI on the Sections

27, 28 and 33 lease acreage under the Altschuld and Strata PSAs is not enforceable as to it despite

its obvious knowledge of the PSAs given that it obtained an assignment of them.  One argument that

Hess makes is that, while it obtained an assignment of rights and interests under the PSAs, it did not

agree to assume any of the obligations.  The court does not reach this argument.    Whether Hess

assumed the obligations under the Altschuld and Strata PSAs, or not, arguably  does not make a

difference if the entitlement to an ORRI on qualifying acreage created by the PSAs is a covenant that

runs with the land.  Hess contends it is not.  In support, Hess cites to the North Dakota Supreme

Court's decision in Golden v. SM Energy Co., 2013 ND 17, 826 N.W.2d 610 ("Golden").  In that

case,  the North Dakota Supreme Court considered whether the party taking an assignment of an

agreement containing a similar obligation to convey an ORRI in an AMI Clause had assumed that

obligation because the parties had stipulated that the obligation to convey the ORRI was a personal

one that did not run with the land.[7]  Hess acknowledges that, while Golden is not dispositive on the

issue of whether AMI covenants run with the land, the North Dakota Supreme Court did not intimate

in Golden that North Dakota law was contrary to what the parties had stipulated.  This is a point

made by another case cited by Hess, the Tenth Circuit decision in  Spring Creek Exploration &

Production Co. v. Hess Bakken Investment, II, LLC, 887 F.3d 1003 (10th Cir. 2018).  In Spring

Creek, the Tenth Circuit agreed with the district court that AMI covenants do not run with the land

under North Dakota law relying in part upon the lack of any suggestion to the contrary by the North

---

[7]  The North Dakota Supreme Court concluded that the assignment in that case was ambiguous with respect to whether there was an assumption of liabilities and remanded that aspect of the case to the district court for further proceedings.

Dakota Supreme Court in <u>Golden</u>.  The Tenth Circuit also gave technical reasons for why it is unlikely that the North Dakota Supreme Court would conclude that AMI covenants do run with the land.  <u>Id.</u> at 1027–29.

The Tenth Circuit's decision is not binding on this court.  And, more recently this court in <u>Slawson Exploration v. Nine Point Energy, LLC</u>, No. 1:17-cv-106, 2019 WL 1518164 (D.N.D. April 2019) (Hovland, D.J.) expressed some doubt as to whether the Tenth Circuit's decision accurately predicts what the North Dakota Supreme Court would decide, including citing to two North Dakota Law Review articles with opposing views on whether an AMI covenant can in certain instances run with the land under North Dakota law.  <u>Id.</u> at \*\*4–5 & n.3–4.  Further, as noted by the Tenth Circuit in <u>Spring Creek</u>, courts in some states have concluded that AMI covenants do run with the land, including Texas.  <u>Spring Creek</u> at 1027–29.  Given this uncertainty and the fact this case can be resolved on other grounds, the court does not reach this argument.

Finally, Hess initially moved to dismiss this action based on a statute-of-limitations defense.  In an earlier decision, the court expressed concern about resolving the case on that grounds based solely upon the pleadings and because of the possibility that there might be fact issues that would need to be resolved.  <u>Power Energy Corp. v Hess Bakken Investment II</u>, No. 1:17-cv-093, 2019 WL 2526169 (D.N.D. June 19, 2019).  Hess states it has not abandoned this defenses and explains it did not reassert it in its present motion because of what the court previously stated about the possibility of fact issues that may need to be resolved.

Hess's statute of limitations defense is by no means frivolous.  Hess contends that the relevant statute of limitation is either the six-year statute of limitations in N.D.C.C. § 28-01-16(1) that applies to breaches of contract generally or the ten-year statute of limitations in § 28-01-15(2)

26

that applies to contracts contained in any conveyance, mortgage, or other instrument affecting title to real property.  Hess argues that, even if the relevant statute is the latter, plaintiffs' time for bringing this action ran prior to the filing of this action on May 8, 2017.

Notably, there is evidence that supports Hess's argument that plaintiffs (or their predecessors-in-interest) likely knew about Prima Exploration's acquisition of the Federal Lease (and thereby their purported entitlement to an ORRI with respect to the Sections 27, 28, and 33 acreage) in March of 2006 when Prima Exploration made its assignment of the 3% ORRI in the Section 6 acreage to the Altschuld Group and Strata.  Further, Strata certainly knew at least by April 20, 2006, given this was the date it signed the federal form pursuant to which Prima Exploration assigned to the other members of the Prima Group their share of the working interest in the Federal Lease. (Doc. No. 35-4, p. 7).  Finally, whatever tolling and estoppel arguments that Powers Energy *might* have may be more problematic with respect to Strata.

## III.   <u>ORDER</u>

Based on the foregoing, Hess Bakken's motion summary judgement (Doc. No. 56) is **GRANTED** and plaintiffs' complaint is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

Dated this 3rd day of May, 2021.

/s/  Charles S. Miller, Jr.
Charles S.  Miller, Jr.
United States Magistrate Judge